UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

FILED

2011 SEP 21  A 10: 33

U.S. DISTRICT COURT
EASTERN DIST. TENN.

_____DEPT. CLERK

JEFFERY DARRELL RAY, JR., )
)
    Petitioner, )
)
v. ) NO. 3:08-CV-311/CR-3:02-129
) *Judge Leon Jordan*
UNITED STATES OF AMERICA, )
)
    Respondent. )

## MEMORANDUM OPINION

Acting *pro se*, federal prisoner Jeffery Darrell Ray, Jr., moves to vacate, set aside, or correct his sentence, 28 U.S.C. § 2255 (Doc. 19), challenging the legality of his confinement pursuant to his December, 2002 conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In February of 2003, Ray was sentenced to a 110-month Guidelines sentence.

I. **Procedural and Factual Background**

According to Ray's presentence report (hereinafter PSR), the facts underlying his federal offense occurred on April 8, 2002, when the Knoxville Police Department, responding to a call of a domestic disturbance, saw him crossing the street in front of the situs of the reported disturbance. The officers ordered Ray to stop. He fled instead and the officers chased him on foot. During the pursuit, Ray threw a 9mm pistol,

which, after his apprehension, was located in the guttering of a house in the area where the pursuing officer heard the sound of metal hitting another surface. The weapon recovered was a High Point 9 mm semiautomatic pistol, with one round chambered; also recovered was a gun holster which Ray had tossed on a vehicle parked beside the house where he was arrested.

Thereafter, the officers interviewed the witness who had called 911, now identified as Ms. Whitney Bowers. Ms. Bowers formerly cohabited with Ray. She explained to the officers that she had been helping Ray and his girlfriend start his car, but when she decided to go to bed instead of assisting him further, Ray retrieved a loaded High Point 9mm pistol from his vehicle, pointed it at her face, cocked it, and said he would shoot her if she called the police. Ms. Bowers stated that, at the time of the pistol pointing, she had her infant in her arms and her two-year old standing beside her. She also related that Ray's girlfriend yelled at him; that he put the pistol in his front pocket and walked away; and that she walked inside and telephoned the police.

On October 16, 2002, Ray was charged in a one-count indictment with being a convicted felon in possession of firearm, (Docs. 3, 16). On December 9, 2002, Ray pled guilty under a plea agreement. No agreed factual basis was ever filed.

In preparing the PSR, the probation officer calculated that, under the 2002 United States Sentencing Guidelines, Ray's base offense level, with his two prior felony drug convictions, was 24. After a §2K2.1(b)(5) four-level increase for possession of the firearm in connection with another felony offense, to wit: attempted aggravated assault, and a three-point reduction for acceptance of responsibility under § 3E1.1(a) and (b), Ray's total offense level was 25, which, with a criminal history category of six, resulted in a guideline range of 110 to 137 months. But Ray's restricted guideline range was 110 to 120 months. *See* 18 U.S.C. § 924(a)(2) (a violation of § 922(g) carries a ten-year maximum prison sentence). On February 24, 2003, Ray received the lowest sentence of 110 months and judgment was entered three days later. He did not appeal to the Sixth Circuit.

Ray now moves to set aside, vacate, or correct his sentence and, in support, has submitted a brief and two supporting affidavits—his own and the victim's, (Docs. 19-22). Anticipating that a question will arise as to whether his motion is barred by the one-year statute of limitations in 28 U.S.C. § 2255(f), Ray claims, as his first ground for relief, that his motion is timely because he filed it within one year of August 8, 2007—the date he was contacted in prison by the victim of the aggravated assault incident, which had led to his four-level increase under § 2K2.1(b)(5)—or June 17, 2008—the date on which she executed her affidavit averring that she did not tell the

officers that Ray threatened or assaulted her; pointed a firearm at her or her son ;or threatened to shoot either of them. Ground two is a claim that he is actually innocent.

## II. Analysis and Discussion

A. Statute of Limitations

Under 28 U.S.C. § 2255, there is a one year period of limitation for filing a motion to set aside, vacate or correct sentence. The statute provides, in pertinent part:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final; [or]
>
> . . .
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner suggests that the statute of limitations in his case is controlled, not by subsection (1), but by subsection (4). To supply necessary context, both subsections will be addressed.

1. *Subsection (1)*

Under this subsection, the one-year limitations period begins to run when the conviction becomes final. 28 U.S.C. § 2255(f)(1). Ray took no direct appeal and, thus,

his conviction became final on March 13, 2003, upon the lapse of the ten-day period during which he might have taken an appeal. *Benitez v. United States*, 521 F.3d 625, 629-630 (6th Cir. 2008) ("[Petitioner]'s judgment became final on September 15, 2003, the date that marked the expiration of the 10-day time period (plus intervening weekends and a federal holiday) when he could have filed a timely appeal of his August 29, 2003 judgment and commitment order.") Therefore, under subsection (1), Ray would have had until March 13, 2004, to file his § 2255 motion.

Ray's § 2255 motion was received in the Clerk's Office on August 8, 2008, but was delivered to prison authorities for mailing on August 5, 2008. Therefore, under the "mailbox" rule, the motion will be considered to have been filed on August 5, 2008. *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997) (*citing Houston v. Lack*, 487 U.S. 266, 270-71 (1988)); *see* Fed. R. App. P. 4(c). Consequently, because the statute of limitations expired on March 13, 2004, as to Ray's § 2255 motion, and because he did not file such a motion until August 5, 2008, it is clearly time-barred under subsection (1).

2. *Subsection (4)*

Under subsection (4), a motion is timely so long as it is filed within one year of the date on which the facts supporting the claim(s) could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(4). Ray attempts to justify

the late filing of his motion by asserting that he believed himself legally prohibited from contacting the victim during and after his sentencing; also believed any such a contact would be counterproductive; and, further, that he "actually believed that she told the police that [he] committed an aggravated felony with a firearm against her," so he had no reason to try to talk to her, (Doc. 20 at 4; Doc. 22, Affidavit of Jeffrey D. Ray, Jr., at ¶¶10 & 15). It was only after the victim's surprising correspondence with him on August 8, 2007, and her affidavit of June 17, 2008, so he asserts, that he had reason to know that the lead investigator had not told the truth about the fracas which resulted in his federal indictment on a felon-with-a-firearm charge.

The first task for the Court is to determine whether and when a diligent petitioner in Ray's circumstances would have discovered Ms. Bowers' true statement, as presented in her affidavit.[1] After a discovery date has been established, the Court must then determine whether the petition was filed within one year of that date. The due diligence requirement is considered in light of the totality of the circumstances, including a petitioner's confinement in prison. The due diligence requirement, however, does not permit a petitioner to delay raising the claim so that he can gather

---

[1] While the Court recognizes, as did the United States in its response, that Ms. Bowers' affidavit suffers from certain deficiencies, the Court accepts the affidavit as legally sufficient for the sole purpose of deciding the timeliness question.

every possible piece of evidence that might support his claim. *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998).

The record reflects that Ray, as he mentions in his brief, did not concur with the section of the PSR involving his use of a firearm during an aggravated assault on Ms. Bowers. (PSR at ¶5) (Ray "does not agree with the portion of the . . . statement that refers to the use of the firearm during an aggravated assault."). Moreover, according to Ray, "[h]e did not plead guilty to the enhancement imposed by the court during sentencing," (Doc. 20 at 12).

The Court concludes that a duly diligent person in Ray situation, given his opposition to statement in the PSR used to enhance his sentence, required that he make a reasonable attempt to contact Ms. Bowers to discuss the contents of her statement to the police officer. Indeed, counsel would have known and, presumably so advised his client that the defense is not prohibited from attempting to interview a witness in a criminal case and also that, if a witness refuses to be interviewed, the citizen accused has subpoena power to compel her testimony. U.S. CONST. amend. VI (guaranteeing a defendant the right "to have compulsory process for obtaining witnesses in his favor").

However, Ray did nothing to verify that the circumstances underlying the proposed § 2K2.1(b)(5) increase to his base offense were as presented in the PSR (i.e.,

that Ms. Bowers actually told the police that he threatened her, pointed a firearm at her, and threatened to shoot them). The fact that she initiated contact with Ray while he was confined and gave a true recounting of the facts via her affidavit suggests that she might have willingly disclosed, had she been asked earlier, the information included in the 2008 affidavit, (Doc. 20 at 9 ("Now that [Ms. Bowers] has discovered the perjured testimony of the officer herself, she is willing to testify to right this wrong.")). At any rate, Ms. Bowers was not an unknown or undiscoverable witness, but Ray's prior co-habitant, with whom he acknowledges he visited following the dissolution of their relationship. The Court has no doubt that, acting with due diligence, Ray could have obtained earlier the facts upon which he now constructs his attack on the § 2K2.1(b)(5) enhancement.

The Court now finds that the date a reasonable petitioner in Ray's position would have discovered that the police officer "had not told the truth about the altercation" which led to Ray being charged with being a felon in possession of a firearm, at the very latest, was the date on which the PSR was disclosed to Ray, i.e., January 29, 2003. Ray's failure to discover facts which should have been known earlier does not illustrate due diligence.

To be timely under subsection (4), this § 2255 motion would have had to be filed on or before January 29, 2004. As noted, the motion to vacate was filed on August 5,

2008—more than one year after the date the facts supporting Ray's challenge to his four-level sentence enhancement, with due diligence, could have been discovered. Ray, therefore, cannot take advantage of the limitations statute triggered by § 2255(f)(4) and his motion is time-barred.

B.  *Equitable Tolling*

The second ground supporting his motion is Ray's actual-innocence claim, which he appears to have broadened to encompass not only the use-of-a-weapon enhancement, but also his conviction on the felon-in-possession offense. As did his time-bar arguments, this argument hinges on Ms. Bowers' affidavit, which he suggests constitutes evidence "that a constitutional violation has probably resulted in the enhancement of one who is actually innocent of the enhancing facts . . .; [that i]t is more likely than not that no reasonable juror would convict the movant of the enhancing facts in light of the new evidence; [and that i]n the absence of such an adjudication, the movant will be the victim of a miscarriage of justice," (Doc. 20 at 11-12).

In *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), a case relied upon by Ray, the Sixth Circuit recognized that, in an extraordinary case, the statute of limitations may be equitably tolled based on a claim of actual innocence. *See id.* at 588-89 (§ 2254 case); *United States, v. Anderson*, 2010 WL 3155889, *2 -*3 (S.D.Ohio July 8, 2010)

(§ 2255 case) (citing *Souter, 395 F.3d at 590*)). However, in *Schlup v. Delo, 513 U.S. 298 (1995)*, a case also cited by Ray, the Supreme Court cautioned that the innocence exception must "remain rare," emphasizing that it should "only be applied in the 'extraordinary case.'" *Id.* at 321. A credible claim of innocence requires a petitioner to produce new, reliable evidence, not presented at trial, demonstrating that it is more likely than not that no reasonable juror viewing the entire record would have convicted him of the charged offense. *Id.* at 327; *Souter, 395 F.3d at 590, 598-99*. The evidence of innocence must be so strong that it undermines confidence in the outcome of the trial. *Souter, 395 F.3d at 590*.

The actual innocence equitable tolling mechanism does not apply here. First of all, the actual-innocence exception is a narrow exception to the general rules governing the procedural default of claims. *Schlup, 513 U.S. at 326-37* (holding that a procedural default of a claim is overlooked "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent"). The matter under consideration is not a procedural default, but, instead, whether Ray is actually innocent *vel non* so as to avoid the time bar set forth in § 2255(f).

Secondly, a petitioner who is claiming actual innocence is contending that new evidence has arisen which shows that, due to a constitutional violation, he has been convicted of an offense of which he is innocent. *See Bousley v. United States, 523*

10

U.S. 614, 622-23 (1998). Ray has presented no new evidence of innocence, since the "evidence" he presents in support of his claim existed before he was even indicted, and certainly at the time of his sentencing. *Johnson v. Norris*, 170 F.3d 816, 818 (8th Cir. 1999) ("[E]vidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence."). Indeed, as observed earlier in this opinion, Ray took issue with the "evidence" (i.e., that he used a firearm in an aggravated assault) incorporated as a part of his PSR.

Furthermore, Ray's assertion that he believed that any contact with the victim would be "counterproductive" suggests that on some level he suspected that such evidence existed, although the Court does not see any downside to a seasonable inquiry into Ms. Bowers' statement, since he was already facing—and indeed received—a significant sentence increase due to the police report involving their altercation.

Finally, although the *Schlup* standard permits a court to make a necessary assessment of the credibility of witnesses, *Schlup*, 513 U.S. at 330, that is not required to dispose of the timeliness issue. But if it were, suffice it to say that a prosecution witness who recants trial testimony commonly is viewed with the "utmost suspicion." *Bower v. Curtis*, 118 Fed.Appx. 901, 908 (6th Cir. 2004) ( citing *Hence v. Smith*, 37 F. Supp. 2d 970, 981 (E.D. Mich. 1999) (quoting *United States v. Kearney*, 682 F.2d 214, 219 (D.C. Cir. 1982)), *but see Souter*, 395 F.3d at 593 n.8 (citing *Workman v. Bell*,

11

227 F. 3d 331, 337-38 (2001) (en banc) (Merritt, J, opinion supporting rehrg. en banc) (noting that recantation of only prosecution witness who testified that he actually saw defendant shoot the victim could support actual innocence claim).

For all these reasons, the Court finds that the facts supporting the claim of innocence are not "newly discovered" and that the actual innocence tolling device does not apply under the circumstances in Ray's case.

### III. Conclusion

As noted above, neither §§ (1) or (4) of § 2255(f) apply to save Ray's motion from the bar of the statute of limitations. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** and his case **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must now decide whether to grant Ray a certificate of appealability. A certificate should issue if he has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Issues must be considered individually under the standard set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000).

When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, as has been done here, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484. If there is a plain procedural bar and the district court is correct to invoke it to resolve the case, and a reasonable jurist could not find that either that the dismissal was error or that the petitioner should be allowed to proceed further, a COA should not issue. *Id.*

This motion was dismissed on a procedural ground–as barred by § 2244(d)'s statute of limitations. Having examined each of Ray's claims under the *Slack* standard, the Court concludes that reasonable jurists could not find that the dismissal of Ray's § 2255 motion claims was debatable or wrong. Therefore, a certificate of appealability shall not issue.

A separate order will enter.


**ENTER:**

                                      LEON JORDAN
                            UNITED STATES DISTRICT JUDGE